UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DUNKIN' DONUTS FRANCHISED
RESTAURANTS LLC, and DD IP
HOLDER LLC,

                Plaintiffs,

        - against -

GOT-A-LOT-A-DOUGH, INC.,
GOT-A-LOT-A-DOUGH II, INC.,
CATHERINE KUNCMAN, BEN-ZION
C. KUNCMAN a/k/a/ BEN KUNCMAN,
NISHA DEONARINE, JAVALICIOUS,
INC., and ARTHUR SOROKA,

                Defendants.
----------------------------------X

**MEMORANDUM & ORDER**
07-CV-2303 (DRH) (MLO)

**APPEARANCES:**

**O'Rourke & Degen, PLLC**
Attorneys for Plaintiffs
225 Broadway, Suite 715
New York, NY 10007
By:    Ronald D. Degen, Esq.
       Scott G. Goldfinger, Esq.
       Kristin M. Lasher, Esq.

**Goldstein PC**
Attorneys for Defendants Got-A-Lot-A-Dough, Inc.,
Got-A-Lot-A-Dough II, Inc., Catherine Kuncman,
Ben-zion C. Kuncman a/k/a/ Ben Kuncman
P.O. Box 2278
Leesburg, VA 20177
By:    Jeffrey M. Goldstein, Esq.


**HURLEY, Senior District Judge:**

      Presently before the Court is the motion of Plaintiffs Dunkin' Donuts Franchised

Restaurants LLC and DD IP Holder LLC (collectively "Plaintiffs" or "Dunkin") to strike the late

answer filed by Defendants Got-A-Lot-A-Dough, Inc., Got-A-Lot-A-Dough II, Inc., Catherine Kuncman, Ben-zion C. Kuncman a/k/a/ Ben Kuncman (collectively "Answering Defendants") and to enter a default judgment against all defendants. For the reasons set forth below, the motion to is denied.

**Background**

Plaintiffs are the franchisor of Dunkin' Donuts franchises and the exclusive licensee of the Dunkin' Donuts trademarks. Defendants Got-a-Lot-a-Dough Inc., Catherine Kuncman and Ben Kuncman (collectively "Franchise Defendants") owned/operated two Dunkin' Donuts franchises in Nassau County, New York beginning in 1998 and 1999, respectively, pursuant to two franchise agreements with Plaintiffs.

**I. Prior Actions Between the Parties**

A little more than one year after the second franchise agreement was signed, disputes arose between the parties. As a result, three civil actions were filed in this District, to wit: Civil Actions Nos. 01-4956; 01-6329; and 02-1098. Among other things, these actions sought judgments that the franchise agreements were terminated and prohibiting the Franchise Defendants from using the Dunkin' Donuts trademarks. Franchise Defendants answered the complaints and interposed counterclaims. For example, in Civil Action No. 02-1098, they averred that Plaintiffs did not provide the support and services which were outlined in the franchise agreement which would enable them to avoid alleged violations and that it was Plaintiffs' intent to rid themselves of a successful franchisee and take back the stores to themselves so it could reap the benefit of the increased value of the stores. (Answer, dated Mar. 2, 2002). The three actions were resolved by Settlement Agreement dated November 15, 2002

(the "2002 Settlement Agreement").

The 2002 Settlement Agreement provided for, among other things, the reinstatement of the franchise agreements for the purpose of allowing the Franchise Defendants to sell the franchises. It was agreed that in the event the Defendants did not transfer the franchises in accordance with the terms set forth therein, they were obligated to de-identify the franchises and comply with all post-termination obligations set forth in the Franchise Agreement. Further, the Franchise Defendants were to execute a general release. The parties also agreed that 1) once the terminations provided for therein were released from escrow, Franchise Defendants were not entitled to remain in any franchise relationship or use the Dunkin' Donuts trademark, name, or dress and 2) in the event of breach by the Plaintiffs, Franchise Defendant's exclusive remedy was a claim for monetary damages. Both parties acknowledged they had the opportunity to obtain independent legal advice of their own selection and choosing and that "[b]oth the legal and practical effect of this Agreement in each and every respect have been fully explained to the respective parties by counsel, and they *acknowledge that it is not the result of any fraud, duress or undue influence* exercised by either party upon the other party." (Emphasis added)

On September 22, 2004, Plaintiffs commenced a fourth action Civil Action No. 04-1400 alleging that the Franchise Defendants breached the 2002 Settlement Agreement. Plaintiffs sought to enforce the 2002 Settlement Agreement and moved for a preliminary injunction. The fourth action was closed on June 1, 2007 when the parties filed a stipulation, So Ordered by the Court, whereby Plaintiffs withdrew their motion for a writ of assistance and a preliminary injunction, the defendants therein agreed not to use Dunkin' Donuts trademarks, trade name and trade dress at the two Nassau County locations where they had been operating their franchises.

The stipulation further provided that Plaintiffs would file a new action to recover unpaid franchise fees.

**II. The Instant Action**

Plaintiffs commenced this action on June 7, 2007. In the complaint, Plaintiffs allege causes of action for breach of contract arising out of the failure to pay monies due under the Settlement Agreement and First Amendment thereto, as well as franchise fees. Plaintiffs also assert claims for injunctive relief arising out of alleged violations of a restrictive covenant in the franchise agreements and claims for trademark and trade dress infringement and unfair competition. On June 12, 2007 the Answering Defendants were served. On June 21, 2007 Plaintiffs filed an unsigned Order to Show Cause seeking a preliminary injunction prohibiting the Answering Defendants from violating the restrictive covenant in the Franchise Agreements. The Order to Show Cause was signed on July 5, 2007 and a hearing on the motion for a preliminary injunction set initially for July 27, 2007. Answering Defendants first appeared in this action on July 13, 2007 when they filed a motion to take discovery in connection with the pending motion for injunctive relief.

The hearing on the motion for a preliminary injunction commenced on July 27, 2007 and concluded on October 10, 2007. During this period of time, Answering Defendants continued to appear and defend in the action. On October 26, 2007, Plaintiffs filed an amended complaint adding three new defendants.[1]

On January 4, 2008, Plaintiffs served a post hearing memorandum noting that Answering

---

[1] Although Answering Defendants' opposition papers reference "5-6 amended complaints" there is fact only one amended complaint on file with the Court.

Defendants had not answered either the complaint or the amended complaint. On January 26, 2008 Plaintiffs filed a pre-motion conference letter for their proposed motion for a default judgment. On January 29, 2008, counsel for Answering Defendants requested of Plaintiffs an extension until February 1, 2008 to file an answer to the amended complaint, which request was denied. Nonetheless Answering Defendants filed an answer on February 1, 2008. On February 4, 2008, Plaintiffs requested a pre-motion conference or in the alternative a briefing schedule for the instant motion.

## Discussion

The resolution of a motion to strike is left to the sound discretion of the district court. *EEOC v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004). "Motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed.' . . . Furthermore, the Second Circuit 'has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default.'" *Azikiwe v. Nigeria Airways Ltd.*, 2006 WL 2224450 (E.D.N.Y. July 31, 2006) (quoting *Connell v. City of New York*, 230 F. Supp. 2d 432, 438 (S.D.N.Y. 2002); *Marfia v. T.C. Zirant Bankasi*, 100 F.3d 243, 249 (2d Cir. 1996).

Similarly, "[t]he dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and "district courts regularly exercise their discretion to deny technically valid motions for default." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 319 (2d Cir. 1986). In exercising this discretion, district courts consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would

5

prejudice the adversary; and (3) whether a meritorious defense is presented." *Diakuhara*, 10 F.3d at 96. In addition, courts may consider other equitable factors, including whether "the entry of default would bring about a harsh or unfair result." *Id.* "[D]efaults are generally disfavored and are reserved for rare occasions [and] when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* Defaults "are particularly disfavored when substantial rights are implicated or when substantial sums of money are demanded." *Id.* at 97 (citations omitted).

Applying these standards, the Court concludes that the answer of Answering Defendants should not be stricken and a default judgment should not be entered against them.

Answering Defendants explain the delay in answering as engendered by "confusion" "as to who Defendants' counsel was representing since there were also several potential conflicts of interest between the Defendants." Defs.' Resp. to Motion to Strike at ¶ 12. The Court is underwhelmed by this explanation. To the extent additional time was necessary to resolve the issue of representation, disregarding the obligation to respond to the complaint was ;not an appropriate course of action. Rather, counsel had the obligation to seek an extension of time pursuant to Fed. R. Civ. P. 6(b). Nevertheless, the Court is cognizant of the fact that this is not a case where there was a total failure to defend. The Answering Defendants both appeared and defended against the motion for a preliminary injunction.

Because motions to strike are disfavored and the Answering Defendants did appear and defend against the preliminary injunction,[2] and striking the answer would foreclose resolution of

---

[2] Answering Defendants should not infer from the denial of the motion to strike that the Court will countenance the disregard of deadlines in the future.

this matter on the merits, the Court exercises its discretion to deny the motion to strike the answer of Answering Defendants. *Cf. Azikiwe,* 2006 WL 2224450, *1 (citing *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7-8 (D.D.C. 2004) (denying motion to strike answer filed six months late as granting motion would "contravene the established policies disfavoring motions to strike . . . and favoring resolution of cases on their merits"); *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980); *Llewellyn v. North American Trading*, 1996 WL 715532 at *2 (S.D.N.Y. Dec. 11, 1996) (denying motion to strike an untimely answer because doing so "would violate the policy resolving cases on the merits")).

Turning to the motion for a default judgment as to the remaining defendants, to wit, Nisha Deonarine, Javalicious Inc. and Arthur Soroka, it is denied, without prejudice, as the motion does not include a certificate of default. Before filing for default judgment, Plaintiffs need to request entry of default by the Clerk of Court. *See* Fed. R. Civ. P. 55(a).

## Conclusion

The motion to strike the answer of Answering Defendants and for a default judgment against all defendants is denied.

**SO ORDERED**

Dated: Central Islip, New York
October 31, 2008

/s/
Denis R. Hurley
Senior District Judge